Edgar ROMNEY, Manager–Secretary, Blouse, Skirt, Sportswear, Children's Wear & Allied Workers Union, Local 23–25, ILGWU, Plaintiff–Appellant,

v.

Alan LIN, Defendant–Appellee.

No. 1602, Docket 95–9275.

United States Court of Appeals, Second Circuit.

Petition for Rehearing Sept. 10, 1996.

Decided Jan. 16, 1997.

Ira Jay Katz, New York City (Max Zimny, Eric B. Chaikin, Alan M. Elis, Chaikin & Chaikin, of counsel), for Plaintiff–Appellant.

Christopher J. Sullivan, New York City (Geri S. Krauss, Carol M. Goodman, Herrick, Feinstein LLP, of counsel), for Defendant–Appellee.

J. Davitt McAteer, Marc I. Machiz, Karen L. Handorf, Maria Makris–Gouvas, U.S. Department of Labor, Washington, DC, filed a brief for amicus curiae The Secretary of Labor.

Before: NEWMAN, Chief Judge, JACOBS, Circuit Judge, and CHATIGNY, District Judge.[1]

JACOBS, Circuit Judge:

Plaintiff-appellant Edgar Romney has filed a petition for rehearing on the grounds, *inter alia*, that our opinion in this case, 94 F.3d 74 (2d Cir.1996), conflicts both with a prior decision of this Court, *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561 (2d Cir.1995), and with the Supreme Court's recent decision in *Peacock v. Thomas*, —— U.S. ——, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). We conclude that our opinion is consistent with the precedent of this Circuit and with Supreme Court authority, and we therefore deny the petition for rehearing. In so doing, we issue this supplemental opinion to address the important questions concerning federal jurisdiction, ERISA preemption, and stare decisis raised by Romney's petition.[2]

### A.

We assume familiarity with our opinion, reported at 94 F.3d 74, and that of the district court, *Romney v. Lin*, 894 F.Supp. 163 (S.D.N.Y.1995); we adduce only those matters necessary to dispose of the petition for rehearing.

Romney is a union official who, in March 1994, held an uncollected state court judgment against a corporate employer that had failed to make required contributions to employee benefit funds governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461.[3] In order to recover the delinquent contributions, Romney commenced a suit in New York State Supreme Court against one of the employer's principal shareholders (Alan Lin), pursuant to a state statute—N.Y.Bus.Corp. Law § 630 (McKinney 1986)—that authorizes suits to hold an employer's ten largest shareholders personally liable (under certain circumstances) for such contributions, including "employer contributions to pension or annuity funds." The shareholder removed the collection action to the United States District Court for the Southern District of New York, pleading federal question jurisdiction on the ground that the state law cause of action was preempted by ERISA. In an opinion dated August 23, 1995, the district court denied Romney's motion to remand the case to state court, and granted the shareholder's motion to dismiss the complaint on the ground that ERISA preempted Romney's claim. *Romney*, 894 F.Supp. at 165–66.

Romney argued on appeal that the district court lacked subject matter jurisdiction to dismiss his suit. We rejected that contention and affirmed, holding that the district court did have removal jurisdiction (pursuant to 28 U.S.C. §§ 1331 and 1441), which allowed it to reach (and make) a determination that Romney's action was preempted by ERISA and should therefore be dismissed. *Romney*, 94 F.3d at 83–84. We concluded (1) that ERISA preempted suits under § 630, *id.* at 78–80 (a conclusion that Romney does not seriously dispute in his petition), and (2) that the district court had federal subject matter jurisdiction if Romney's § 630 action fell "within the scope of the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132(a)." *Id.* at 80 (quoting *Metropolitan*

---

1. The Honorable Robert N. Chatigny, of the United States District Court for the District of Connecticut, sitting by designation.

2. We find no merit to Romney's other arguments for rehearing and do not address them.

3. The union (Blouse, Skirt, Sportswear, Children's Wear & Allied Workers Union, Local 23–25, ILGWU) and the employer (Goodee Fashions, a New York corporation) had entered into a collective bargaining agreement that obligated the employer to make contributions to three multiemployer ERISA funds. After the employer failed to make the required contributions during the first half of 1992, the union commenced arbitration proceedings (pursuant to the terms of the collective bargaining agreement) and won a default arbitration award on October 9, 1992. The award was confirmed by the New York State Supreme Court on April 22, 1993, at which time a judgment was entered against the employer in the amount of $70,647.17. Execution of the judgment was returned unsatisfied.

*Life Ins. Co. v. Taylor,* 481 U.S. 58, 66, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987)).

Romney's petition for rehearing primarily attacks our affirmative finding that his § 630 suit *does* fall within the scope of ERISA § 502(a). *Romney,* 94 F.3d at 80–81. He asserts that two recent opinions, *Peacock v. Thomas,* —— U.S. ——, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996), and *Greenblatt v. Delta Plumbing & Heating Corp.,* 68 F.3d 561 (2d Cir.1995), compel the conclusion that his action under § 630 was outside the scope of ERISA's civil enforcement provisions and that the district court therefore lacked subject matter jurisdiction.

### B.

■■■■■ Romney offers two reasons why his action under § 630 is outside the scope of ERISA § 502(a), thereby depriving the district court of jurisdiction to dismiss his complaint: (i) § 630 authorizes—and the union expressly sought to enforce in this case—the collection of a money judgment from a third party; and (ii) his lawsuit did not set forth a violation of ERISA § 515, 29 U.S.C. 1145 (a common prerequisite to actions such as his under ERISA § 502(a)(3)), because the union could not allege that the shareholder defendant was an "employer" obligated to make pension fund contributions by contract.

Before we proceed further, it is important to make clear that, contrary to much of the language in the rehearing petition and in the Secretary of Labor's amicus brief, Romney's action is not properly characterized as a suit to enforce a judgment. Section 630 creates personal liability of an employer's ten largest shareholders directly for the unpaid contributions. One element of a § 630 suit is "the return of an execution unsatisfied against the corporation upon a judgment recovered against it," but the suit is not one to enforce the unsatisfied judgment; it is a suit to collect the delinquent contributions.

As we pointed out in our initial opinion:

> [Section] 630 alters corporate liability principles by placing liability on other shoulders; it is not a mere mechanism for the collection of money judgments. That is implicitly recognized by at least one New York court, which has held that a shareholder who is sued under § 630 must still 'have his or her day in Court' and be free to litigate the existence of the debt, even though a suit under the statute is predicated on the existence of a judgment against the employer corporation that has been returned unsatisfied. *Matarazzo v. Segall,* 156 Misc.2d 1, 5, 600 N.Y.S.2d 890, 892 (App. Term 1993) (mem.); *see* N.Y. Bus. Corp. Law § 630(a).

*Romney,* 94 F.3d at 83. As noted, Romney relies on *Peacock* as well as *Greenblatt* in aid of both arguments. It is therefore useful to review both of those cases before stating our grounds for distinguishing them.

### C.

In *Peacock,* an employee brought an ERISA class action in federal court against his employer for breach of fiduciary duty in administering an employee benefit plan. —— U.S. at ——, 116 S.Ct. at 865. The district court entered judgment against the employer in the amount of the unpaid benefits. *Id.* While the judgment was on appeal, an officer and shareholder of the employer company named Peacock settled many of the employer's accounts. *Id.* The employee failed to execute on the judgment pending appeal, and was unsuccessful in collecting on the judgment after its affirmance by the court of appeals. *Id.* The employee thereafter sued Peacock personally in federal court, alleging fraudulent conveyance of the company's assets (to prevent satisfaction of the ERISA judgment), and later added a claim styled "Piercing the Corporate Veil Under ERISA and Applicable Federal Law." *Id.* at —— —— ——, 116 S.Ct. at 865–66. The district court did pierce the corporate veil, and entered a judgment against Peacock in "the precise amount of the judgment" against the employer (plus interest and fees). *Id.* at ——, 116 S.Ct. at 866. The court of appeals affirmed, holding that the district court had ancillary jurisdiction over the suit against Peacock. *Id.*

The Supreme Court framed the issue as "whether federal courts possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability

for a money judgment on a person not otherwise liable for the judgment." *Id.* at —, 116 S.Ct. at 865. The Court held that ERISA did not furnish federal subject matter jurisdiction for the collection action against Peacock. First, the Court stated:

> We are not aware of, and Thomas does not point to, any provision of ERISA that provides for imposing liability for an extant ERISA judgment against a third party. *See Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 833 [108 S.Ct. 2182, 2187, 100 L.Ed.2d 836] (1988) ("ERISA does not provide an enforcement mechanism for collecting judgments …").

— U.S. at —, 116 S.Ct. at 866. Second, the Court rejected the claim that the collection action arose under ERISA § 502(a)(3), because the complaint in that second suit "alleged no violation of ERISA or of the [company's benefit] plan." *Id.* The Court explained that "[t]he wrongdoing alleged in the complaint"—Peacock's supposed fraudulent transfers—occurred "some four to five years after [the] ERISA plan was terminated," and concededly " 'did not occur with respect to the administration or operation of the plan.' " *Id.* (citation omitted). The Court concluded, therefore, that the employee had "failed to allege a claim under § 502(a)(3) for equitable relief": his veil-piercing claim—which was simply "a means of imposing liability on an underlying cause of action"—did not state a cause of action under ERISA and could not "independently support federal jurisdiction … [absent an] alleg[ation of] a violation of an ERISA provision or term of the plan." *Id.* (internal quotations and citations omitted).

*Greenblatt* was a suit on behalf of employee benefit funds against a surety that had issued a bond (required under a collective bargaining agreement) securing the obligation of a union employer to make benefit payments to the funds. *See* 68 F.3d at 567. The employer defaulted, and the plaintiffs sued on the bond. *Id.* The district court denied the surety's motion to dismiss for lack of subject matter jurisdiction, and entered judgment against the surety. *Id.* The surety appealed, and this Court issued an opinion addressing "whether the district court had

jurisdiction by virtue of … preemption of state law" under ERISA. *Id.*

The *Greenblatt* Court stated (as we said in *Romney* ) that "for the district court to have jurisdiction by virtue of ERISA preemption," there must be findings both that (1) ERISA preempted the state law cause of action, and (2) the state claim was "within the civil enforcement provisions of ERISA" § 502(a). *Id.* at 573. The *Greenblatt* Court concluded that, because it could not make the latter finding, federal jurisdiction could not be based on ERISA preemption.

First, the *Greenblatt* Court found that the "claim on the bond … d[id] not conflict with any enforcement mechanism specified in ERISA," and therefore did not warrant preemption under *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), in which "[t]he existence of a [pension] plan and the employer's pension-defeating motive were *elements of the cause of action.*" *Greenblatt,* 68 F.3d at 574–75 (emphasis added). Second, *Greenblatt* did not involve "direct assumption of the employer's functions with regard to the administration of [an ERISA] plan," but only a contractual relationship "by which the surety guaranteed payment of a certain sum if the [employer] defaulted on its obligations." *Id.* at 575–76. The surety, therefore, was "not itself directly obligated under the terms of the collectively bargained agreement to make any contributions; its obligations ar[o]se solely under the bond." *Id.* at 576.

In sum, both *Peacock* and *Greenblatt* held that federal jurisdiction was lacking because the state law cause of action at issue did not fall within the civil enforcement provisions of ERISA § 502(a): the state causes of action did not depend upon (i) the existence of an ERISA plan and (ii) the defendants' failure to comply with the obligations that ERISA imposes on employers (or others subject to ERISA). In *Peacock,* the enforcement action depended only on the existence of the judgment, and in *Greenblatt,* the surety action depended only on the contingency of default under the bond.

**D.**

Romney's petition describes his § 630 action as a "state court proceeding to enforce the collection of a judgment." In so doing, the petition mischaracterizes Romney's own lawsuit. As we have noted, his is not a suit to collect a judgment; it is a suit to collect directly from shareholders the delinquent contributions that the corporate employer has not paid. Building on that mischaracterization, Romney argues that our opinion "overlooked the *Peacock* holding that actions to collect judgments against third parties do not fall within ERISA § 502(a)." Petition for Rehearing at 4. In its only relevant reference to "third parties," the *Peacock* Court said that no "provision of ERISA ... provides for imposing liability for an extant ERISA judgment against a third party." —— U.S. at ——, 116 S.Ct. at 866. That principle controlled *Peacock*, which involved an attempt to enforce an extant ERISA judgment by way of a garden-variety state law *collection* action. But Romney's claim is not a true analogue of the claim in *Peacock*.

The shareholder in this case did not claim that Romney's suit was preempted because it duplicated (or conflicted with) a *judgment collection* provision found in ERISA; he claimed that Romney's § 630 action—a suit to recover benefit payments owed to employees—conflicted with (or fell "within the scope of") the *civil enforcement* provisions of ERISA § 502(a), which governs, *inter alia,* private actions to recoup pension fund contributions. Our original opinion concluded that Romney's lawsuit under § 630 constituted a state law instrument for recovering overdue employee benefits, and that it therefore fell within the scope of ERISA § 502(a). *See Romney,* 94 F.3d at 81. In explaining why such a cause of action satisfied the requirements of ERISA preemption, we emphasized that Romney's suit was *not* in the nature of a third-party collection action (at issue in *Peacock*):

> Romney brought his claim under § 630 in order to collect delinquent contributions to ERISA plans that Goodee Fashions was obligated to pay. However, ERISA § 502(a) already provides a means for collecting delinquent ERISA contributions from employers. Under ERISA § 502(a)(3)(B), a plan fiduciary may sue to obtain any "appropriate equitable relief (i) to redress [violations of the terms of a plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). ERISA § 515 provides:
>
> > Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
>
> 29 U.S.C. § 1145. Thus, ERISA § 502(a) already provides a cause of action to enforce employer contributions to ERISA plans: a plan fiduciary may obtain relief for delinquencies pursuant to ERISA § 515.
>
> ERISA, however, does not impose upon the shareholders of the employer corporation the *employer*'s statutory liability to make contributions. [*Cement & Concrete Workers District Council Welfare Fund v.*] *Lollo,* 35 F.3d [29] at 33 [(2d Cir.1994)]; [*Sasso v.*] *Cervoni,* 985 F.2d [49] at 50 [(2d Cir.1993)]. Congress could have provided otherwise, but did not. Since Congress elected to impose no direct liability on shareholders for such contributions, permitting suits against shareholders under § 630 would reallocate the burdens and benefits of establishing and maintaining ERISA plans for a class of New York corporations, and afford those ERISA plans special and stringent means of civil enforcement. We hold that Romney's cause of action falls within the scope of ERISA § 502(a), and that the district court had removal jurisdiction. *See Metropolitan Life Ins.,* 481 U.S. at 62–64, 107 S.Ct. at 1545–47.

*Romney,* 94 F.3d at 81 (emphasis in original).

*Peacock* is therefore inapposite. Nothing in Romney's petition persuades us otherwise.

### E.

Romney's second noteworthy argument on rehearing is that our opinion "is inconsistent with the *Peacock* and *Greenblatt* holdings that an action does not fall within ERISA § 502(a)(3) if the plaintiff does not assert a violation of a provision of ERISA or of a plan." Petition for Rehearing at 6. However, Romney's complaint *does* specifically allege that "[t]he [employer] *Corporation* did not ... pay the [required] contributions to the Funds that were owed to the [employees]," thus "accru[ing] a debt to the [employees]," Complaint ¶¶ 7, 8 (emphasis added); and Romney could not have pursued his lawsuit against the shareholder absent this critical allegation of fault by the employer. Just as in *Ingersoll–Rand Co. v. McClendon,* where "[t]he existence of a [pension] plan and the employer's pension-defeating motive were elements of the cause of action," *Greenblatt,* 68 F.3d at 574–75, an action under § 630 has the following elements: (1) a "debt[ ]"—defined to include "employer contributions to pension or annuity funds"—"due and owing to any of [the corporation's] laborers, servants or employees ... for services performed by them for such corporation"; and (2) "an execution unsatisfied against the corporation upon a judgment recovered against it for such services." N.Y Bus.Corp. Law §§ 630(a) and (b).

As our initial opinion makes clear, § 630 "impose[s] upon the shareholders ... the *employer*'s statutory liability to make [employee benefit] contributions." *Romney,* 94 F.3d at 81 (emphasis in original). Romney contends that his § 630 lawsuit falls outside the scope of ERISA § 502(a) (and thus fails to confer federal jurisdiction) because his complaint "does not set forth [an ERISA] violation ... [by] claim[ing] that the *Shareholder* is an employer contractually obligated to make contributions." Petition for Rehearing at 3 (emphasis added). That argument fails because Romney alleges "violations of ERISA" by the corporate *employer;* even more important, the violations he alleges are ones for which the corporation's *shareholders* are expressly held accountable by § 630.

Romney's § 630 action thus falls squarely within the Supreme Court's "conflict preemp-

tion" doctrine, under which the preemptive effect of § 502(a) is held to be "so complete that an ERISA pre-emption defense provides a sufficient basis for removal of a cause of action to the federal forum." *Ingersoll–Rand,* 498 U.S. at 145, 111 S.Ct. at 486. New York's § 630 is just like the Texas cause of action at issue in *Ingersoll–Rand,* because the state statute "[u]nquestionably ... purports to provide a remedy for the violation of a right expressly guaranteed by [ERISA] and exclusively enforced by § 502(a)." *Id.*

The difference between Romney's action and those in *Peacock* and *Greenblatt* is therefore apparent. In *Peacock,* the basis for the defendant's liability was the state's veil-piercing doctrine. In *Greenblatt,* the basis for the defendant's liability was a surety contract. Veil-piercing and surety law are principles of general applicability, within a state's traditional purview, that bear on employment benefits only insofar as the underlying transactions happen to involve employment benefits. ERISA does not create federal law on veil-piercing (whether or not the veil pierced is that of a corporation that has been an employer subject to ERISA), or on the enforcement of judgments generally. Nor does ERISA create federal law on the enforceability of surety contracts (whether or not the bond secures obligations that the employer owed under ERISA).

The actions in *Peacock* and *Greenblatt,* based on generally applicable state law, did not warrant complete "conflict preemption" under ERISA. *See Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 841, 108 S.Ct. 2182, 2191, 100 L.Ed.2d 836 (1988) (action to collect judgments against ERISA plan participants under state's general garnishment statute not preempted by ERISA). The action on the surety contract in *Greenblatt,* for example, furnished a mechanism for recovering an ERISA liability only because the underlying obligation—created without the state's mandate or influence—was an ERISA obligation. *Compare Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 483 (federal jurisdiction based on ERISA preemption is appropriate because "[w]e are *not* dealing here with a generally applicable stat-

ute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan") (emphasis added).

In this case, however, a true conflict arises because the relevant sections of ERISA specify who must (and by implication, who need not) fulfill the employer's obligation to pay ERISA benefits, while the state law designates who *else* must fulfill that obligation (placed by ERISA on employers only). In other words, the state-imposed obligation is the very obligation to make payments that ERISA requires, and the state law itself designates new ERISA obligors. Thus, the basis for Romney's liability is an obligation that ERISA imposes on someone else. Such a situation plainly constitutes complete "conflict preemption" conferring federal jurisdiction under ERISA.

Romney's petition does not alter our view, expressed in our initial opinion, that § 630 conflicts with—and thereby falls within— ERISA § 502(a), by "reallocat[ing] the burdens and benefits of establishing and maintaining ERISA plans for a class of New York corporations, and afford[ing] those ERISA plans special and stringent means of civil enforcement." *Romney,* 94 F.3d at 81. Indeed, we addressed the substance of Romney's present arguments in our opinion:

Romney argues that § 630 merely regulates the collection of judgments and thus does not augment civil enforcement measures available under ERISA. *See Mackey v. Lanier Collection Agency & Serv. Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *Greenblatt,* 68 F.3d at 574. However, the wording of § 630 imposes on shareholders a liability that otherwise would not exist. This reading is confirmed authoritatively by *[Sasso v.] Vachris* [, 66 N.Y.2d 28, 494 N.Y.S.2d 856, 484 N.E.2d 1359 (1985) ]: "[S]ection 630 is remedial in nature; it *provides an additional enforcement mechanism* by which plaintiffs can recover delinquent contributions.... [T]he only effect of section 630 on employee benefit plans is to *give plaintiffs a cause of action to recover payments* the corporation was already obligated to provide." 66 N.Y.2d at 33–34, 494

N.Y.S.2d at 859, 484 N.E.2d 1359 (emphasis added).

*Romney,* 94 F.3d at 83 (emphasis in original) (footnote omitted). Once again, nothing in Romney's petition for rehearing alters our previous views.

Though we are confident, for the reasons set forth, that Romney's state law claim is preempted by ERISA, we acknowledge that whether his suit is "*within the scope*" of § 502(a) for purposes of the complete preemption doctrine is a close question.[4] The suit alleges an ERISA violation *by* the corporate employer, but it is not brought *against* a party made liable by ERISA. That distinction obliges us to consider the meaning of the Supreme Court's phrase "within the scope" of § 502(a).

The phrase first appeared, in the context of the Court's development of the complete preemption doctrine, in *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983):

It may be that, as with § 301 as interpreted in *Avco [Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) ], any state action coming within the scope of § 502(a) of ERISA would be removable to federal district court, even if an otherwise adequate state cause of action were pleaded without reference to federal law.

*Franchise Tax Board,* 463 U.S. at 24, 103 S.Ct. at 2854 (footnote omitted). The Court did not decide whether the complete preemption doctrine applied to ERISA because California's suit to collect taxes was not within the scope of ERISA.

Four years later, the Court resolved the issue posed in *Franchise Tax Board* and ruled that the complete preemption doctrine applies to ERISA, so long as the suit claimed to be preempted is "within the scope" of § 502(a). *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64, 66, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987). The "scope" question was an easy one in *Metropolitan Life* since

---

**4.** Chief Judge Newman is the author of the concluding portion of this opinion.

the suit "by a beneficiary to recover benefits from a covered plan ... f[ell] directly under § 502(a)(1)(B) of ERISA." *Id.* at 62–63, 107 S.Ct. at 1546. *Metropolitan Life* thus shed little light on how far the Court might go in deeming a suit to be "within the scope" of § 502(a). That decision makes clear, however, that even though a suit is preempted by ERISA, it is not necessarily within federal court jurisdiction. There are thus some cases in which a state law cause of action is preempted, but only a state court has jurisdiction to so rule. That is the inevitable consequence of two circumstances: (a) the general unavailability of a federal forum to adjudicate a federal defense (*e.g.*, preemption) and (b) the Supreme Court's establishment of the "scope" requirement, instead of applying the *Avco* version of the complete preemption doctrine to ERISA.

■ Having formalized the "scope" requirement in *Metropolitan Life*, the Court has had no occasion since that decision to elucidate its meaning. Plainly, the Court cannot have meant that the only suits "within the scope" are those that are so completely within the four corners of ERISA as to be *winning* ERISA claims, since the "scope" inquiry arises only as to claims that are *defeated* by ERISA's preemption provision. We think a suit that alleges an ERISA violation can be within the scope of ERISA, even though it is directed against a defendant not liable under ERISA, and that Romney's suit is within the scope of § 502(a). Unlike the claim in *Franchise Tax Board*, where "the State's right to enforce its tax levies is not of central concern to the federal statute," 463 U.S. at 25–26, 103 S.Ct. at 2855, Romney's suit to collect ERISA contributions is very much of central concern to the federal statute. Moreover, whereas the Supreme Court noted that "ERISA does not provide an alternative cause of action in favor of the State to enforce its [tax] rights," *id.* at 26, 103 S.Ct. at 2855, ERISA explicitly provides such a cause of action for Romney, at least vis à vis the employer. Finally, we note that our *Greenblatt* decision, in rejecting federal jurisdiction, observed that in that case we were "not dealing with any type of agency or ownership relationship," 68 F.3d at 575,

whereas the defendant sued by Romney is precisely in an ownership relationship.

These distinctions from claims not within the scope of ERISA suffice to make Romney's claim one for which it is entirely appropriate that a federal court make the preemption ruling.

For all of these reasons, the petition for rehearing is denied.