Joseph TOURANGEAU, et al.

v.

UNIROYAL, INC., et al.

No. CIV.A. N–86–208(AHN).

United States District Court,
D. Connecticut.

July 30, 1999.

Seth Kupferberg, Sipser, Weinstock et al., New York City, for plaintiffs.

Daniel M. Abuhoff, Debevoise & Plimpton, New York City, for defendants.

Paul F. Thomas, Federal Public Defender's Ofice, New Haven, CT, for Jesper Group, Inc.

Stewart I. Edelstein, Cohen & Wolf, P.C., Bridgeport, CT, for Michelin NA, Inc.

### RULING ON MOTION TO DISMISS OR STRIKE THIRD–PARTY COMPLAINT

NEVAS, District Judge.

This action arises under a pension and welfare benefit plan insurance policy which the third-party defendant, National Union Fire Insurance Co. Of Pittsburgh, Pa. ("NU"), issued to Uniroyal Goodrich Tire Company ("UGTC"), successor in interest to Uniroyal, Inc.[1]

Presently pending before the court is NU's motion to dismiss or strike the third-party complaint filed by UGTC. The complaint seeks reimbursement under a NU policy for defense costs UGTC incurred in connection with an action filed in 1994 by the plaintiffs, a class of Uniroyal tire retirees, who sought to enjoin a proposed increase in the contribution rates they paid for medical benefits under UGTC's ERISA plan (the "UGTC plan"). For the following reasons, the motion to dismiss or strike [doc. # 432] is DENIED.

### BACKGROUND

This is round six in a battle that began in 1986 when a class of retirees of Uniroyal Tire Company (the "Tourangeau plaintiffs" or the "tire retirees") brought an action to protect their rights to lifetime medical benefits under Uniroyal's ERISA plan. That action was settled and a consent judgment was entered in 1987 (the "Consent Judgment").

---

1. UGTC was acquired by Michelin North America, Inc. in 1989. For convenience, the court will refer to UGTC and its successor as "UGTC."

In 1994, after UGTC announced an increase in the monthly contribution rates, the Tourangeau plaintiffs brought an action to enjoin the increase and to enforce the Consent Judgment (the "enforcement action"). After two appeals to the Second Circuit, the enforcement action was finally resolved in 1998. The Second Circuit ruled that (1) UGTC was bound by the 1987 Consent Judgment even though it was not a party to the settlement agreement, (2) UGTC was entitled to increase the contribution rates paid by the tire retirees as justified by plan experience and medical cost escalation, and (3) UGTC must pay the attorney's fees that the Tourangeau plaintiffs incurred in the enforcement action. *See Tourangeau v. Uniroyal, Inc.,* 101 F.3d 300 (2d Cir.1996). On remand from the Second Circuit, UGTC and the plaintiffs agreed to mediate these issues. They reached an agreement as to the amount of the rate increase and the plaintiffs' attorney's fees, which this court found to be fair and equitable. Accordingly, a Supplemental Order and Judgment was issued in December 1998.

Thereafter, UGTC filed the pending third-party complaint against NU seeking reimbursement of its costs of defense in the enforcement action and the amount it paid to the Tourangeau plaintiffs as attorney's fees in connection with the enforcement action. UGTC alleges that it is entitled to reimbursement pursuant to the terms of a Pension and Welfare Benefit Plan Fiduciaries' and Administrators' Insurance Policy (the "Policy") which NU issued to UGTC in 1994. The Policy covers losses, including defense costs, incurred by UGTC in connection with alleged wrongful acts asserted against it by reason of its status as a fiduciary of a covered ERISA plan or as a sponsor organization of a covered ERISA plan.

### STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v.*

*Sundram,* 947 F.2d 1011, 1014–15 (2d Cir. 1991). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Still v. DeBuono,* 101 F.3d 888 (2d Cir.1996). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). In deciding a motion to dismiss, consideration is limited to the facts stated in the complaint or in documents attached thereto as exhibits or incorporated therein by reference. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

### DISCUSSION

NU asserts three grounds in support of its motion to dismiss. First, it claims that the Policy is an ERISA "fiduciary liability-only" policy and does not cover UGTC for defense costs incurred in the enforcement action because that action was not an action under ERISA or an action for breach of fiduciary duty, but was a simple breach of contract action. Second, NU claims that the UGTC plan, which provides medical benefits to the tire retirees, is not a covered plan under the Policy because it is not a plan for the benefit of UGTC employees. Third, NU maintains that the third-party complaint does not meet the requirements of Fed.R.Civ.P. 14(a) because the third-party complaint does not allege that NU "is or may be liable" to the third-party plaintiff.

In opposition, UGTC maintains that it is a sponsor organization and an insured under the Policy, that the UGTC plan is a covered plan under the Policy, that the act of UGTC in raising the contribution rates paid by the tire retirees under the UGTC plan was an alleged wrongful act under the Policy, and that it suffered a loss as defined under the Policy.

## A. *The Policy*

The Policy affords three types of coverage: (1) "Fiduciaries' and Administrators' Insurance" (Coverage A1); (2) "Sponsor Organization and Plan Reimbursement Insurance" (Coverage A2); and (3) "Defense Costs" (Coverage B). The Policy insures against losses arising from claims for alleged wrongful acts by insureds in connection with a covered ERISA plan.

Pertinent definitions under the Policy include "fiduciary," "sponsor organization," "insured," "loss," "covered plan," and "wrongful act." According to the Policy, a fiduciary means a fiduciary as defined in ERISA.[2] The sponsor organization is UGTC. Insured means the sponsor organization (UGTC), the plan(s) and any natural person insured.

Loss means damages, judgments and defense costs, and excludes seven types of losses which are not relevant to this action.

Covered plan is defined as an ERISA plan which "was, is or hereafter becomes sponsored by the Sponsor Organization or sponsored jointly with the Sponsor Organization and a labor organization, solely for the benefit of the employees of the Sponsor Organization."

A wrongful act of a fiduciary of the plan, the plan, or the sponsor organization is defined as a violation of any of the responsibilities, obligations or duties imposed on fiduciaries by ERISA or any matter claimed against the insureds solely by reason of their status as a fiduciary of the plan, the plan or the sponsor organization. With respect to administrators, a wrongful act is any act, error or omission in performance of certain defined administrative duties.

## B. *Claim Coverage*

NU maintains that the Policy is a fiduciary liability-only policy that only covers fiduciary acts in connection with a covered ERISA plan. It contends that the enforcement action was a simple breach of contract action that arose out of the 1987 Consent Judgment and not out of an ERISA plan. It further asserts that the act of raising the contribution rates for medical benefits was a corporate act, not a fiduciary act.

UGTC asserts that NU mischaracterizes the enforcement action as a simple contract action. It maintains that the enforcement action was an action relating to an ERISA plan because it involved rights under a settlement agreement which had resolved a prior dispute under an ERISA plan. UGTC relies on two recent cases in support of this claim. *See Romney v. Lin,* 105 F.3d 806 (2d Cir. 1997); *Board of Trustees of Hotel & Restaurant Employees Local 25 v. Madison Hotel,* 97 F.3d 1479 (D.C.Cir.1996).

In *Romney,* the Second Circuit held that a suit to collect directly from shareholders a judgment against the corporation for delinquent contributions to an ERISA plan was a suit arising under ERISA, not a state law cause of action to collect a judgment. Because the underlying litigation against the employer was a suit under ERISA, the court concluded that the subsequent suit against the shareholders was also a case arising under ERISA.

Similarly, in *Madison Hotel,* the D.C. Circuit held that where parties enter into a settlement agreement to resolve an action for delinquent contributions to an ERISA plan, a subsequent suit to enforce the settlement agreement is not converted into a purely state-law governed contract action. Rather, the second suit is one that seeks enforcement of ERISA rights embodied in the settlement agreement.

While *Romney,* and *Madison Hotel,* involve ERISA preemption and subject matter jurisdiction, they are instructive in determining whether the enforcement action in this case is a suit under ERISA or a simple state-law breach of contract action.

■ According to the principles applied in these cases, as well as numerous others, a suit arises under ERISA, even where the complaint does not allege an ERISA viola-

---

**2.** ERISA defines fiduciary in functional terms: a person is a fiduciary to the extent he exercises any discretionary authority or discretionary control respecting management of a plan or dis- position of its assets or has any discretionary authority or discretionary responsibility in the administration of a plan. *See* 29 U.S.C. § 1002(21)(A).

tion, so long as the ultimate relief sought relates to or refers to an employee benefit fund. *See Madison Hotel*, 97 F.3d at 1487–88 (citing *Zuniga v. Blue Cross & Blue Shield*, 52 F.3d 1395, 1401–01 (6th Cir.1995)). A suit arises under ERISA where it seeks enforcement of ERISA rights embodied in a settlement agreement. *Madison Hotel*, at 1486; *see also Petrilli v. Gow*, 957 F.Supp. 366, 373 (D.Conn.1997) (holding that a suit arises under ERISA where it arises solely because of the existence of an ERISA plan, or where the existence of an ERISA plan is necessary to demonstrate liability on the claim at issue). A suit relates to an employee benefit plan if it has a connection with or reference to such a plan and the connection is not too tenuous, remote or peripheral. *See Romney*, 105 F.3d at 807 (citing *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 96–97, 100, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)).

■ Here, the enforcement action was brought to enforce ERISA rights embodied in a settlement agreement that had resolved an ERISA action. In that settlement agreement, the tire retirees had secured the right to lifetime medical, drug and life insurance benefits under UGTC's welfare benefit plans. The benefits were guaranteed to remain at the level provided for on the date the action was commenced and could not be terminated or materially reduced. The enforcement action was commenced after UGTC announced a premium rate increase for the benefits guaranteed in the settlement agreement. The retirees claimed that the rate increase amounted to a reduction in the level of their vested ERISA benefits. Thus, the relief they sought related to an employee benefit plan—the UGTC plan. Clearly, the enforcement action arose solely because of the existence of an ERISA plan and the litigation had a direct connection to that ERISA plan. Accordingly, the court rejects NU's claim that the enforcement action was a simple breach of contract action that did not arise under an ERISA plan.

With regard to NU's claim that the act of raising rates was an uncovered corporate act, not a fiduciary act, NU relies on numerous cases which hold that an act by a sponsor organization that eliminates, modifies, amends or changes benefits of an ERISA plan is a non-fiduciary, corporate act. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare benefit plans, and when they do so, they do not act as fiduciaries but are analogous to the settlors of a trust); *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) (plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries).

■ The court has no quarrel with NU's statement of the law. It is well settled that an employer or sponsor organization does not act as a fiduciary when it amends, modifies, terminates or changes benefits in an existing ERISA plan. This principle is rooted in the text of ERISA's definition of fiduciary. Only when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration does a person become a fiduciary. *See Lockheed*, 517 U.S. at 882, 116 S.Ct. 1783. Because the defined functions of a fiduciary do not include plan design, an employer may amend an employee benefit plan without being subject to fiduciary review. *See id.*

But NU's argument misses the mark. The real issue here is whether the act of increasing contribution rates was an amendment, modification or change in benefits to the ERISA plan. Logic and recent case law supports the conclusion that the act was not an amendment, but rather was a discretionary act carried out in accordance with an existing plan provision which provided for rate changes "in accordance with plan experience and medical cost escalation." Because the act of changing contribution rates was a valid exercise of an existing provision in the UGTC plan that authorized such changes, it did not constitute a plan amendment or modification. *See Krumme v. Westpoint Stevens Inc.*, 143 F.3d 71, 85 (2d Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 592, 142 L.Ed.2d 534 (1998).

Indeed, in *Krumme*, the Second Circuit was faced with a similar issue. The *Krumme*

plaintiffs argued that their employer impermissibly amended an ERISA pension plan by changing the discount rate used to calculate accelerated lump sum payments of future accrued retirement benefits. The Second Circuit concluded that changing the discount rate was not a plan amendment because the employer simply acted pursuant to its authority under the plan documents which authorized changes to actuarial assumptions such as the discount rate. *See id.* at 85. In reaching this conclusion, the Second Circuit relied on the reasoning of the Seventh Circuit which, in a case involving similar facts, was unwilling to contort the plain meaning of "amendment" to include the valid exercise of a provision which was firmly ensconced in the pension document. *See id.* (citing *Dooley v. American Airlines,* 797 F.2d 1447, 1452 (7th Cir.1986)); *see also Whitaker v. Texaco, Inc.,* 729 F.Supp. 845, 851 (N.D.Ga.1989) (holding that if a plan provision gives the fiduciary discretion, the exercise of that discretion is obviously not an amendment of a provision, but is simply the exercise of a provision) (cited in *Krumme* ); *Stewart v. National Shopmen Pension Fund,* 730 F.2d 1552, 1561 (D.C.Cir.1984) (holding that "there is no amendment when a provision already incorporated into the plan is applied and actions authorized by the plan are carried out by the persons authorized to do so") (cited in *Krumme* ).

▮ Just as in *Krumme,* the plan administrators in this case were acting in accordance with an express provision incorporated in the UGTC plan. Thus, the act of raising the rates was not a plan amendment or modification, but merely a discretionary act by the plan fiduciaries.

For these reasons, the court finds that UGTC has stated a claim for coverage under the Policy for an alleged wrongful fiduciary act in connection with an ERISA plan.

### C. *Plan Coverage*

▮ In further support of its claim that there is no coverage under the Policy, NU maintains that the UGTC plan is not a covered plan because the tire retirees were never directly employed by UGTC, but instead were employed by UGTC's predecessor, and,

therefore, the UGTC plan is not a plan "solely for the benefit of the employees of the sponsor organization."

In making this argument, NU relies on the Policy language which defines "covered plan" as any "Employee Welfare Benefit Plan(s) . . . sponsored solely by the sponsor organization or sponsored jointly with the sponsor organization and a labor organization, solely for the benefit of the employees of the sponsor organization."

In opposition, UGTC contends that the Policy definition uses the disjunctive to describe two types of covered plans: those sponsored solely by the sponsor organization and those sponsored jointly by the sponsor organization and a labor organization. UGTC argues that the phrase "solely for the benefit of the employees of the sponsor organization," follows the disjunctive "or," and thus only modifies the phrase "sponsored jointly by the sponsor organization and a labor organization." It contends that the intent of the limiting phrase is to exclude employees of other employers who might be covered under jointly-sponsored multi-employer plans. UGTC further asserts that NU's reading of the Policy would lead to the nonsensical result of excluding virtually all of UGTC's other pension and welfare benefit plans. This is so, it argues, because its other plans provide benefits to former employees and spouses and dependents of employees and thus, according to NU's contorted reading of the Policy, they would not be plans "solely for the benefit of the employees of the sponsor organization."

▮ While UGTC's arguments are persuasive, NU has also posited a plausible interpretation of the Policy's definition of covered plan. Because the Policy is subject to two plausible alternate readings, it is ambiguous. *See, e.g., Kelly v. Figueiredo,* 223 Conn. 31, 37–38, 610 A.2d 1296 (1992). Moreover, the present record does not provide an adequate basis for the court to determine with any degree of certainty which interpretation correctly reflects the intention of the parties. Accordingly, under well-established rules of construction, the ambiguity must be construed in favor of the insured. *See Hansen v. Ohio Cas. Ins. Co.,* 239 Conn. 537, 542–43, 687 A.2d 1262 (1996). Thus, for purposes of this motion to dismiss, the court adopts

UGTC's construction of the Policy, and concludes that the UGTC plan is a covered plan.

### D. *Dismissal Under Rule 14(a)*

Finally, NU contends that the third-party complaint does not satisfy the requirements of Fed.R.Civ.P. 14(a) because UGTC does not allege that NU "is or may be liable" by reason of Uniroyal's claim against UGTC.[3] NU maintains that impleader under this rule is only proper where the claim against the third-party defendant is derivative of the claim against the third-party plaintiff. Thus, it argues that because UGTC does not allege that NU is or may be liable for UGTC's liability to Uniroyal, the third-party complaint is procedurally improper. The court disagrees.

The primary purpose of impleading third parties is to promote judicial efficiency by eliminating "circuity of actions." *See* 6 Wright & Miller, Fed. Practice & Procedure § 1442. The objective of the rule is to avoid a situation that arises when a defendant has been held liable to a plaintiff and then finds it necessary to bring a separate action against a third individual who may be liable to defendant for all or part of plaintiff's original claim. *See id.* Moreover, impleader not only is available to the original parties to the action, but also can be employed by any impleaded party on the same basis as the original defendant. *See id.*

To promote judicial efficiency and avoid circuity, the court will permit UGTC's claim against NU to proceed by impleader. NU does not allege that it has suffered any prejudice as a result of being impleaded in this action that it would not suffer if it were sued in a separate action.

### CONCLUSION

For the foregoing reasons, NU's motion to dismiss or strike the third-party complaint [doc. # 432] is DENIED.

---

**3.** Fed.R.Civ.P. 14(a) provides: "When Defendant May Bring in Third Party. At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."