**Marie M. SEARS, Plaintiff,**

v.

**CHRYSLER CORPORATION, a foreign corporation, Joseph McCormick, James Kiple, Dennis Alm, Don Witkowski, David Reed, and Hobart Porter, jointly and severally, Defendants.**

No. 94CV–74387–DT.

United States District Court,
E.D. Michigan,
Southern Division.

April 28, 1995.

Arnold M. Gordon, Gordon, Cutler, Southfield, MI, for plaintiff.

Gregory S. Muzingo, Chrysler Motors Corp., and Maxine G. Goodman, Chrysler Corp., Office of the Gen. Counsel, Highland Park, MI, for defendants.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO STATE COURT

ROSEN, District Judge.

### I. INTRODUCTION

On September 29, 1994, Plaintiff Marie M. Sears, a former employee of Defendant Chrysler Corporation ("Chrysler"), filed a four-count complaint in Wayne County Circuit Court against Chrysler and six of its employees—Joseph McCormick, James Kiple, Dennis Alm, Don Witkowski, David Reed and Hobart Porter. Plaintiff seeks damages for breach of employment contract (count I), wrongful and/or retaliatory discharge (count II), intentional infliction of emotional distress (count III), and conspiracy to commit the tort of wrongful and/or retaliatory discharge and/or intentional infliction of emotional distress (count IV). All of these claims are based exclusively on state law.

Defendants removed this action to federal court on October 28, 1994, pursuant to 28 U.S.C. § 1441, alleging that Plaintiff's claims are preempted by § 514(a) of the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1144(a). The complaint contains only a passing reference to ERISA-governed benefits:

> As a result of the aforesaid discharge without just cause, your Plaintiff has sustained a loss of earnings and earning capacity; loss of fringe and pension benefits; . . . all of which damages are permanent and she will continue to suffer these damages in the future.

(Complaint, ¶ 31).

Plaintiff filed a Motion to Remand on November 21, 1994, to which Defendants responded on December 19. A hearing was held on February 9, 1995; and the parties submitted supplemental briefs on February 21 and 27. After considering the parties' arguments, the Court now finds, for the reasons stated below, that this case should be remanded to State court.

### II. FACTUAL BACKGROUND

Plaintiff began working for Chrysler in April of 1981, and served in a number of

positions before her promotion to training program development specialist in 1988. In that position, she was supervised by Defendant Donald Witkowski. Witkowski reported to Defendant Dennis Alm, who in turn reported to Defendant James Kiple. Plaintiff alleges that she uncovered evidence of a conspiracy by Kiple and others to remove, for personal gain, parts from vehicles that were to be donated by Chrysler to charitable organizations. As a result of her discovery, the individual Defendants allegedly began a campaign of harassment in an effort to force her resignation or to secure grounds for termination. Suffering from depression and hysteria due to their actions, Plaintiff eventually took a medical leave of absence.

During this time, Chrysler initiated a program whereby certain employees were offered incentives to terminate their jobs. The incentives are described in a two-page document dated April 2, 1991, entitled "1991 Special Early Retirement/Voluntary Termination Incentive Pension." Plaintiff was offered a "Voluntary Termination Incentive Pension" (VTIP); and, allegedly under duress, agreed to accept it on April 17, 1991. The document describes the VTIP option as follows:

If you accept this offer, you will receive:
- your choice of a lump sum ranging from $15,000 to $62,000 (minimum benefit depending on your years of continuous service) or a monthly actuarial equivalent annuity;
- a deferred pension (if you are vested) under the Chrysler Pension Plan and Salaried Employees' Retirement Plan (if applicable) payable at age 65 or as early as age 60 on a reduced basis;
- 6 months of Health Care and Life Insurance coverage (unless you become covered under another employer's plan);
- your choice of a Chrysler vehicle(s) with the applicable tax allowance indicated in the enclosed Pamphlet;
- if you are a participant under the Chrysler Salaried Employees' Savings Plan/Supplemental Savings Plan, your Plan assets will be available to you in accordance with the provisions of such

Plans (please refer to the explanation contained in the retirement brochure);
- a payment equal to the balance of any unused, earned vacation;
- outplacement assistance as available under existing Chrysler programs.

To assist you in arriving at a decision, an ESTIMATE of your VTIP lump sum and age 65 deferred pension is shown on your personalized summary statement enclosed. If you have any questions regarding this estimate or the Program in general, you should contact your Personnel Department.

(Neither party supplied the Court with a copy of Plaintiff's personalized summary statement.) On April 17, 1991, Plaintiff signed a VTIP acceptance which states:

I hereby accept this offer of Voluntary Termination Incentive Pension. The effective date of my separation will be April 30, 1991, I acknowledge that I have had reasonable time to consider this offer, to discuss it with my attorney and/or financial advisor, and that my acceptance of this offer is completely voluntary on my part and was in no way forced upon me by Chrysler. I further understand that this election is in lieu of any other choice of retirement, including Employee Option or Normal retirement, to which I might otherwise be eligible.

Plaintiff seeks compensation for her loss of salary and benefits, as well as her emotional distress. She does not seek reinstatement with Chrysler.

### III. ANALYSIS

### A. ERISA–PREEMPTION AND REMOVAL JURISDICTION.

Federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. And, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). Thus, a defendant may remove to federal court any civil action arising under the laws of the United States. Whether a

particular civil action arises under the laws of the United States depends on application of the "well-pleaded complaint rule." Under that rule, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (citing *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)).

> [T]he plaintiff is the master of the complaint ... [and] may, by eschewing claims based on federal law, choose to have the cause heard in state court.... [A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.

*Caterpillar Inc. v. Williams,* 482 U.S. 386, 398–99, 107 S.Ct. 2425, 2433, 96 L.Ed.2d 318 (1987). Thus, "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted does not establish that they are removable to federal court." *Id.* at 398, 107 S.Ct. at 2432.

Nevertheless, the Supreme Court has recognized some areas of federal legislation that are so comprehensive that they constructively convert state law claims that come within their scope into claims "arising under" federal law, creating a "complete preemption exception" to the well-pleaded complaint rule. *See Avco Corp. v. Aero Lodge No. 735, International Ass'n of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). In *Metropolitan Life, supra,* the Supreme Court extended this exception to state law claims that fall within the scope of ERISA's civil enforcement provision, 29 U.S.C. § 1132(a). Section 1132(a) allows a plan participant to bring a civil action "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...." 29 U.S.C. § 1132(a)(1)(B).[1]

ERISA also contains a general preemption provision. With exceptions not relevant here, it states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). This clause "is conspicuous in its breath," *FMC Corporation v. Holliday,* 498 U.S. 52, 56, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990), and has been interpreted broadly, requiring preemption of state law "even if the law is not specifically designed to affect [an ERISA-governed plan], or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990). However, some state laws may have "too tenuous, remote, or peripheral" an effect on a benefit plan to fall within the statute's preemptive force. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983).

In a recent case involving removal jurisdiction, the Court of Appeals for the Sixth Circuit distinguished between two types of ERISA preemption—preemption implied by § 1132(a), and preemption explicitly created by § 1144(a). *Warner v. Ford Motor Co.,* 46 F.3d 531 (6th Cir.1995) (en banc). *See also Alexander v. Electronic Data Systems Corp.,* 13 F.3d 940 (6th Cir.1994); *Harris v. Provident Life and Acc. Ins. Co.,* 26 F.3d 930, 933–34 (9th Cir.1994); *Alexander v. Anheuser–Busch Companies, Inc.,* 990 F.2d 536, 540 (10th Cir.1993). The first "preempts actions brought in state court that could have been brought under ERISA's civil enforcement section." *Alexander* at 943 (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 53–56, 107 S.Ct. 1549, 1556–58, 95 L.Ed.2d 39 (1987)). The second preempts state law claims that "relate to" an ERISA-governed benefit plan, but could not have been brought under ERISA's civil enforcement provision. *Warner* held that removal jurisdiction is appropriate only if a state law claim falls within

---

1. This provision also allows plan participants to seek redress for violations of various ERISA-imposed duties by plan administrators and fiduciaries. 29 U.S.C. §§ 1132(a)(1)(A), (2), (3) and (4).

the scope of ERISA's civil enforcement provision, § 1132(a)(1)(B):

> [*Metropolitan Life* ] ruled that the exception [to the well-pleaded complaint rule] is narrowly limited in the ERISA context to state common law or statutory claims that fall within the ERISA civil enforcement provision of 29 U.S.C. § 1132(a)(1)(B) because "the legislative history consistently sets out this clear intention to make [§ 1132(a)(1)(B) ] suits brought by participants or beneficiaries federal questions for the purpose of federal court jurisdiction...." *Id.* at 66 [107 S.Ct. at 1547]. Therefore, in order to come within the exception a court must conclude that the common law or statutory claim under state law should be characterized as a superseding ERISA action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," as provided in § 1132(a)(1)(B).

> The Court specifically stated "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Metropolitan Life,* at 64. Section 1144 falls precisely into this category. It allows ERISA to preempt state laws when they "relate to" matters governed by ERISA but does not create a federal cause of action for matters which only "relate to" ERISA's field of concern. Thus, § 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. As a consequence, no removal jurisdiction exists under § 1144.

*Warner* at 534 (emphasis added).

## B. *ARGUMENTS OF THE PARTIES.*

In their first brief, filed before *Warner* was issued, Defendants relied on *Van Camp v. AT & T Information Systems,* 963 F.2d 119 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). The plaintiff in *Van Camp* brought an action in state court alleging age and sex discrimina-

tion in violation of state law. The defendant, Van Camp's former employer, had given him the option of a demotion or a special early retirement pension. Van Camp accepted the latter and "signed an agreement attesting that he retired voluntarily and understood that his election to retire under AT & T's enhanced pension plan was irrevocable." *Id.* at 120. The employer removed the case to federal court based on ERISA's general preemption provision, 29 U.S.C. § 1144. Most of the opinion concerns application of § 1144 to Van Camp's claims. The court assumed, without comment, that claims preempted by § 1144 may be removed to federal court.

In their supplemental brief, filed after *Warner,* Defendants concede that *Van Camp*'s reliance on § 1144 preemption for removal jurisdiction is no longer good law. Instead, they argue that Plaintiff's complaint, by seeking recovery for the value of lost future benefits, falls within the scope of ERISA's civil enforcement provision. They assert that calculation of those damages would require the Court "to clarify [Plaintiff's] rights to future benefits under the terms of the plan" within the meaning of § 1132(a)(1)(B). Plaintiff can avoid § 1132(a)(1)(B) preemption, according to defendants, only if she amends her complaint to waive any right to the use of ERISA benefits as a measure of damages.

In her initial brief, Plaintiff argued that the facts of her case differ from *Van Camp,* and that her claims are too remotely connected to ERISA-governed benefits to be preempted by § 1144. In her supplemental brief, Plaintiff argues that *Warner* controls, and requires remand of this case.

## C. *PLAINTIFF'S CLAIMS MUST BE REMANDED.*

Plaintiff is correct; *Warner v. Ford Motor Co.* controls this case. *Warner* requires remand of cases that are removed to federal court based exclusively on the general preemption provision of ERISA, 29 U.S.C. § 1144.[2]

The Court notes that the Sixth Circuit explicitly overturned *Van Camp* in *Warner.* However, that Court was concerned with *Van Camp*'s silent

---

**2.** This Court expresses no opinion on whether § 1144 actually preempts Plaintiff's claims. This determination must be left to the State court.

■ Defendants' argument that Plaintiff's claims fall within the scope of 29 U.S.C. § 1132(a)(1)(B) is without merit. That section provides a cause of action for a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Plaintiff is neither a plan participant within the meaning of ERISA, nor· does she seek to clarify her rights to future plan benefits.

The term "participant" is defined by ERISA as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer...." 29 U.S.C. § 1002(7). The Supreme Court discussed this definition in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989):

> In our view, the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," *Saladino v. I.L.G.W.U. National Retirement Fund*, 754 F.2d 473, 476 (CA2 1985), or former employees who "have ... a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits, *Kuntz v. Reese*, 785 F.2d 1410, 1411 (CA9) (*per curiam*), cert. denied, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986).... A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.'" *Saladino v. I.L.G.W.U. National Retirement Fund, supra*, at 476.

*Id.* at 117–118, 109 S.Ct. at 957–58.

Nevertheless, ERISA provides a cause of action for one type of former employee which does not fit neatly into this definition:

It shall be unlawful for any person to discharge, fire, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.... ·The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140 (emphasis added). "A discharge to prevent vesting of benefits in violation of [§ 1140] by definition must be challenged by someone other than a current employee or someone with a claim to vested benefits." *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1222 (5th Cir.1992). In *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Supreme Court recognized that § 1132(a) and § 1140, in combination, directly preempt state law wrongful discharge claims based on an employer's desire to avoid the vesting of pension benefits.[3] "The implication of the Court's holding that the discharged employee must look solely to ERISA for his remedy is that he would have standing to do so." *Christopher* at 1221.

Likewise, several courts, including the Court of Appeals for the Sixth Circuit, have held that former employees, who but for some alleged action taken by their employers in violation of ERISA would still be plan participants, have standing to sue pursuant to § 1132(a). *See Astor v. International Business Machines Corp.*, 7 F.3d 533, 538–539 (6th Cir.1993) (rejecting argument that former employees who alleged they would have been eligible for additional benefits if they had not been coerced into premature early retirement "lack standing because they have 'received everything they were entitled to receive under the terms of the plan,' ... and are, therefore, no longer plan participants protected by ERISA's provisions"); *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154 (6th Cir.1988) (assuming, without comment, that former employees who volun-

---

acceptance of removal jurisdiction, not with its application of § 1144. As to the merits of *Van Camp*'s finding of preemption, the Court made no explicit holding. Rather, it stated that *Van Camp* "mistakenly allowed removal in a case not covered by § 1132(a)(1)(B) *and only arguably*

covered by § 1144(a)." *Warner* at 535 (emphasis added).

**3.** The Court also found that such claims are preempted by § 1144 of ERISA.

tarily terminated their employment had standing to bring ERISA claim against employer who allegedly misrepresented, in violation of ERISA, its intention to enhance severance plan benefits in the future); *Vartanian v. Monsanto Co.*, 14 F.3d 697 (1st Cir.1994); *Laniok v. Advisory Committee of the Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360 (2d Cir.1991).[4]

■ Thus, in order for Plaintiff's claims to fall within the scope of § 1132(a)(1)(B) of ERISA's civil enforcement provision, Plaintiff must be either (1) a current employee, (2) a former employee who has a reasonable expectation of returning to work, (3) a former employee who has a colorable claim to vested benefits, or (4) a former employee who alleges that but for an ERISA violation she would still be covered by a plan and/or entitled to vested benefits.[5]

■ Plaintiff does not satisfy any of these requirements. She is no longer a Chrysler employee, has no expectation of returning to work, does not seek vested benefits[6], and, unlike the former employees in *Ingersoll–Rand, Christopher, Astor, Berlin, Vartanian* and *Laniok*, does not allege that Chrysler violated any provision of ERISA. Indeed, the grounds for her wrongful discharge claim are completely divorced from any ERISA-related activity. For purposes of this lawsuit, Plaintiff is not a Chrysler plan participant.

Moreover, Plaintiff's claim for the value of lost benefits should not be construed, as Defendants argue, as a request for clarification of her rights to future benefits. She does not seek benefits due to her under the terms of ERISA-governed plans. Rather, she seeks *the value of benefits* she would have received if she had continued to work for Chrysler. Although reference to the terms of Chrysler's plans may be required to determine their value to Plaintiff, the dispute is not about those terms. There is no indication that, if it becomes necessary to refer to the plans, the parties would have any difficulty agreeing on the proper calculation of Plaintiff's losses.

Numerous courts have held that a request for wrongful termination damages derived in part from the value of lost benefits does not bring a claim within ERISA's preemptive force. *See, e.g., Burks v. Amerada Hess Corp.*, 8 F.3d 301, 306 (5th Cir.1993); *Hospice of Metro Denver v. Group Health Ins.*, 944 F.2d 752, 755 (10th Cir.1991); *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1405 (9th Cir.1988); *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); *Drescher v. Union Underwear Co., Inc.*, 858 F.Supp. 653, 656–57 (W.D.Ky.1994); *Watkins v. Shared Hospital Services Corp.*, 852 F.Supp. 640, 645 (M.D.Tenn.1994); *Samuel v. Langham*, 780 F.Supp. 424, 427 (N.D.Tex.1992); *Nowoc v. Rheem Mfg. Co.*, 772 F.Supp. 977, 979 (S.D.Tex.1991); *Tippett v. Old Kent Bank of Petoskey*, 134 F.R.D. 159, 160–61 (W.D.Mich. 1991); *Yageman v. Vista Maria, Sisters of the Good Shepherd*, 767 F.Supp. 144, 145 (E.D.Mich.1991); *Rody v. Midland Enterprises, Inc.*, 685 F.Supp. 129, 130–31 (M.D.La.1988); *Totton v. New York Life Ins. Co.*, 685 F.Supp. 27, 31 (D.Conn.1987). In *Morningstar v. Meijer, Inc.*, 662 F.Supp. 555 (E.D.Mich.1987), the court reasoned as follows:

> Plaintiff seeks to recover the value of the employment she lost. She does not seek to force Meijer to buy her medical insurance, give her a pension and pay her benefits when she is entitled. Plaintiff seeks

---

**4.** Other courts have held to the contrary. *See, e.g., Raymond v. Mobil Oil Corp.*, 983 F.2d 1528 (10th Cir.1993); *Sanson v. General Motors Corp.*, 966 F.2d 618 (11th Cir.1992).

**5.** For the sake of completeness, category (3) should be expanded to include former employees who, for a variety of reasons, continue to be covered by health and/or other welfare benefit plans provided by their former employers. Unlike pension benefits, ERISA does not require that welfare benefits vest. Thus, even though

they have no claim to vested benefits, as long as their former employers continue to provide them with coverage, these former employees should have standing to sue to enforce the terms of those plans.

**6.** At the hearing on this matter, Defendants conceded that Plaintiff is entitled to receive, at her normal retirement age, pension benefits that accrued and vested while she was still employed by Chrysler. These benefits are not the subject of this dispute, and do not depend on its outcome.

the value of employment rather than "benefits." One element of valuing this employment will involve the valuation of the fringe benefits.... The most likely manner of valuation will be to determine what it would cost the plaintiff to purchase substantially similar insurance, and what was the employer's contribution to the pension. No legal construction of a plan would likely occur since the trier of fact, probably a jury, would be placing a dollar value on the fringe benefits. There is no danger of inconsistent policies nor would there be any interference with plan administration. Suits over lost employment are brought against the employers and should have no direct bearing on any aspect of plan administration.

*Id.* at 557 (footnote omitted).

Similarly, Plaintiff here seeks damages from her employer and several of its employees; she does not seek to recover from plan assets. Neither calculation of the damage amount, nor its payment would place any burden on plan administration.[7] *Cf. Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (goal of ERISA preemption is to simplify benefit plan administration); *Michigan Carpenters Council v. C.J. Rogers, Inc.*, 933 F.2d 376, 383 (6th Cir.1991) (state law preempted by ERISA because it "would have a substantial ongoing effect on the administration of the employee benefit plan").

██ In short, "ERISA's goal of protecting [pension and other] benefits from interference does not transform ERISA's statutory scheme into a federal job protection scheme where those benefits are fully paid out, or create a federal cause of action for wrongful discharge. To do so would ... transform traditional employment law in the fifty states." *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1539 (10th Cir.1993) (footnote omitted).

In conclusion, because Plaintiff is not a plan participant and does not seek clarification of the terms of any employee benefit plan, the Court finds that Plaintiff's state law claims do not fall within the scope of ERISA's civil enforcement provision, and, therefore, should not have been removed to federal court.

## IV. CONCLUSION

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand to State Court is GRANTED.

### ORDER REMANDING CASE TO WAYNE COUNTY CIRCUIT COURT

PRESENT: Honorable Gerald E. Rosen
United States District Judge

By memorandum opinion and order entered today, this Court granted Plaintiff's Motion to Remand to State Court. This case was initially filed in Wayne County Circuit Court on September 29, 1994. For the reason's state in the Court's memorandum opinion, IT IS HEREBY ORDERED that this case be REMANDED to Wayne County Circuit Court.

SO ORDERED.

---

7. If Chrysler were required to pay any damage award out of plan assets, or if Plaintiff had asked for reinstatement and retroactive enrollment in Chrysler's pension plan, the results would be different.