**C.C. MID WEST, INC., Plaintiff,**

v.

**Howard McDOUGALL, Robert J. Baker, Arthur H. Bunte, Jr., R.V. Pulliam, Sr., Joe Orrie, Jerry Younger, George J. Westley, Ray Cash, and Ronald J. Kubalanza, individuals, jointly and severally, Defendants.**

No. 97–CV–74831–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 14, 1998.

Michael F. Smith, Robert J. Battista, Detroit, MI, for plaintiff.

Thomas W. Hill, Columbus OH, Robert M. Vercruysse, Bingham Farms, MI, Paul H. Townsend, Jr., Detroit, MI, for defendants.

ROSEN, District Judge.

## OPINION AND ORDER TO REMAND CASE TO OAKLAND COUNTY CIRCUIT COURT

### I. INTRODUCTION

On August 25, 1997, Plaintiff C.C. Mid West, Inc., filed a Complaint against Defendants in Oakland County Circuit Court alleging claims of tortious interference with contractual relations and tortious interference with business expectancies. Specifically, Plaintiff, a trucking company, is suing nine Defendants for damages allegedly caused by threats Defendants have made relating to a pension fund in order to deter independent contractors from contracting with C.C. Mid West.

On September 22, 1997, Defendants filed a Notice of Removal stating that the Court had original jurisdiction over Plaintiff's claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e), because the claims asserted an action against Defendants who are fiduciaries of an employee pension benefit plan subject to that Act. Thus, Defendants claimed the case was removable pursuant to 28 U.S.C. §§ 1441 and 1446.

Plaintiff contested the removal in a Motion to Remand dated October 2, 1997, claiming that its Complaint sought relief wholly on state-law grounds and did not present a federal question. On October 10, 1997, Defendant filed a Response to Plaintiff's Motion to Remand, to which Plaintiff submitted a Reply Brief on October 20, 1997.

### II. FACTS

Plaintiff C.C. Mid West is a trucking company based in Warren, Michigan. Defendant Howard Kubalanza is the Executive Director of the Central States, Southeast and Southwest Areas Pension Fund, a multi-employer pension fund ("the Fund"). Defendants McDougall, Baker, Bunte, Pulliam, Orrie, Younger, Westley, and Cash are all Trustees of the Pension Fund. The Pension Fund is a multi-employer pension benefit plan that receives contributions from employers accepted for participation in the Fund and pays pen-

sion benefits to retired employees of these employers.

In the 1980's and early 1990's, Central Transport, Inc. was a trucking company owned by a holding company called CenTra, Inc. Central Transport participated in the Fund pursuant to the terms of a participation agreement, a provision of which prohibited a participating employer from engaging in agreements to divide employees doing the same type of work into two groups, one which participates in the Fund and one which does not.

Defendants claim that in the mid–1990's the Fund became concerned that Central Transport was participating in such an arrangement. Specifically, the Fund was concerned that CenTra had allocated employees and work among its various subsidiaries so that the employees more likely to qualify for a pension were placed in subsidiaries participating in the Fund, and the employees less likely to qualify for a pension were placed in subsidiaries not participating in the Fund.[1]

At the time of the Fund's investigation, Central Transport was one of a number of trucking company subsidiaries of CenTra. Other such subsidiaries included C.C. Mid West, a non-participating company. The Fund was allegedly concerned that CenTra was moving work and employees from Central Transport to C.C. Mid West and/or other non-participating companies.[2]

In early 1997, Central Transport shutdown its operations and laid off 235 truck drivers. As employees of Central Transport, the drivers had pension contributions made to the Fund on their behalf by Central Transport. After the layoff, Defendants allegedly told the laid-off drivers that they could self pay into the fund in order to safeguard their full pension benefits. The Fund's "Self Contribution" program allows employees to make voluntary contributions to the Fund during times in which his employer is not required by the collective bargaining agreement to make contributions on his behalf (e.g., if the employee is laid off). This prevents participants from losing previously accumulated credits due to a break in service.

Plaintiff attempted to employ the services of former Central Transport employees on an owner-operator/independent contractor basis. Plaintiff entered into independent contractor agreements with some of these employees, and was actively negotiating with others. According to Defendant, C.C. Mid West wanted the independent contractors to make their own pension contributions by means of the Self–Contribution provisions of the Fund's plan. Defendants claim that the Fund believed such contributions by employees working for an affiliate of CenTra would violate the Fund's plan and rules regarding self contributions and adverse selection. Therefore, Defendants claim Mr. Kubalanza wrote to former employees of Central Transport advising them of the acceptance of the 1994–1998 collective bargaining agreement and informing them that they would not be able to make Self–Contributions during any periods of time in which they worked for any affiliates of CenTra.

According to Plaintiff, Kubalanza's repeated communications to the former Central Transport employees constituted threats that were calculated to force many, if not all, of the employees who had entered into owner-operator independent contracts with Plaintiff to sever those ties, since Plaintiff has no contractual connection to the Fund and does not make contributions to it. Plaintiff further claims that Defendants knew or reasonably should have known that the threat would have a chilling effect on negotiations between Plaintiff and former Central Transport employees.

---

1. The Fund claims that such behavior places the Fund's actuarial soundness at risk, because the Fund relies upon some participants qualifying for pensions while others do not.

2. During the investigation, the Fund received a collective bargaining agreement entered into by Central Transport and the unions which covered the 1994–1998 period and which required contributions to the Fund. The agreement provided for Central Transport to pay a higher contribution rate, which would qualify its employees for higher pensions, if the agreement were accepted by the Fund. The Fund postponed its decision until the investigation was complete. Central Transport subsequently shutdown its operations, thus making the investigation moot. The Fund then accepted the 1994–1998 collective bargaining agreement to provide the participants immediate eligibility for the higher pension class.

Plaintiff filed suit in Oakland County Circuit Court, alleging tortious interference with contract and tortious interference with business expectancies. Defendants removed the case to federal court, claiming that the jurisdiction was proper under ERISA. Plaintiff now moves to remand to case to state court.

### III. *ANALYSIS*

██ Federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action arises under federal law under § 1331 if the federal law creates the cause of action or "the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). As a practical matter, virtually no court permits removal on the latter basis, as courts most often require that the complaint itself actually contain a federal claim. *See,* Schwarzer, Tashima, & Wagstaffe, *Federal Civil Procedure Before Trial,* § 2:697 (1997). The fact that a state law cause of action may require reference to a federal law or raise incidental federal issues is not enough to lead to removability. *See, Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Smith v. Industrial Valley Title Ins. Co.,* 957 F.2d 90 (3rd Cir.1992).

██ A defendant may remove to federal court any civil action arising under the laws of the United States. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). Whether a particular civil action arises under the laws of the United States depends on application of the "well-pleaded complaint rule." Under that rule, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (citing *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81

L.Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)).

> [T]he plaintiff is the master of the complaint . . . [and] may, by eschewing claims based on federal law, choose to have the cause heard in state court. . . . [A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.

*Caterpillar Inc. v. Williams,* 482 U.S. 386, 398–99, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Thus, "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted does not establish that they are removable to federal court." *Id.* at 398.

Nevertheless, the Supreme Court has recognized some areas of federal legislation that are so comprehensive that they constructively convert state law claims that come within their scope into claims "arising under" federal law, creating a "complete preemption exception" to the well-pleaded complaint rule. *See Avco Corp. v. Aero Lodge No. 735, International Ass'n of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). In *Metropolitan Life, supra,* the Supreme Court extended this exception to state law claims that fall within the scope of ERISA's civil enforcement provision, 29 U.S.C. § 1132(a).[3]

ERISA also contains a general preemption provision. With exceptions not relevant here, it states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C. § 1144(a).[4] This clause "is conspicuous in its breath," *FMC Corporation v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990), and has been interpreted broadly, requiring preemption of state law "even if the law is not specifically designed to affect [an ERISA-governed plan], or the effect is only indirect."

---

**3.** 29 U.S.C. 1132 is the codified section of ERISA § 502.

**4.** 29 U.S.C. 1144 is the codified section of ERISA § 514.

*Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). However, some state laws may have "too tenuous, remote, or peripheral" an effect on a benefit plan to fall within the statute's preemptive force. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

In a recent case involving removal jurisdiction, the Court of Appeals for the Sixth Circuit distinguished between two types of ERISA preemption—preemption implied by § 1132(a), and preemption explicitly created by § 1144(a). *Warner v. Ford Motor Co.,* 46 F.3d 531 (6th Cir.1995) (en banc). *See also Alexander v. Electronic Data Systems Corp.,* 13 F.3d 940 (6th Cir.1994); *Harris v. Provident Life and Acc. Ins. Co.,* 26 F.3d 930, 933–34 (9th Cir.1994); *Alexander v. Anheuser-Busch Companies, Inc.,* 990 F.2d 536, 540 (10th Cir.1993). The first "preempts actions brought in state court that could have been brought under ERISA's civil enforcement section." *Alexander* at 943 (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 53–56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). The second preempts state law claims that "relate to" an ERISA-governed benefit plan, but could not have been brought under ERISA's civil enforcement provision. *Warner* held that removal jurisdiction is appropriate only if a state law claim falls within the scope of ERISA's civil enforcement provision, § 1132(a)(1)(B):

> [*Metropolitan Life*] ruled that the exception [to the well-pleaded complaint rule] is narrowly limited in the ERISA context to state common law or statutory claims that fall within the ERISA civil enforcement provision of 29 U.S.C. § 1132(a)(1)(B) because "the legislative history consistently sets out this clear intention to make [ § 1132(a)(1)(B)] suits brought by participants or beneficiaries federal questions for the purpose of federal court jurisdiction...." *Id.* at 66. Therefore, in order to come within the exception a court must conclude that the common law or statutory claim under state law should be characterized as a superseding ERISA action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

terms of the plan," as provided in 1132(a)(1)(B).

> The Court specifically stated "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Metropolitan Life,* at 64. Section 1144 falls precisely into this category. It allows ERISA to preempt state laws when they "relate to" matters governed by ERISA but does not create a federal cause of action for matters which only "relate to" ERISA's field of concern. Thus, § 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. As a consequence, no removal jurisdiction exists under § 1144.

*Warner* at 534 (emphasis added).

Plaintiff interprets *Warner* and *Metropolitan* Life to restrict ERISA removal to civil enforcement suits that fall under 1132(a)(1)(B). (Citing *Sears v. Chrysler Corporation,* 884 F.Supp. 1125, 1129 (E.D.Mich. 1995) (citing *Warner,* 46 F.3d at 534); *Greater Lansing Ambulatory Surgery Center v. Blue Cross & Blue Shield of Michigan,* 952 F.Supp. 516, 518 (E.D.Mich.1997); *Moll v. UAW,* 911 F.Supp. 269, 272 (E.D.Mich.1996)). Several other cases also seem to support the proposition that only participants and beneficiaries can bring civil actions under ERISA. *See, e.g., Alexander v. Electronic Data Systems Corp.,* 13 F.3d 940, 946 (6th Cir.1994) ("As previously noted, § 1132 preempts state claims by 'participants or beneficiaries' to enforce certain rights guaranteed by ERISA."); *Fugarino v. Hartford Life & Accident Insurance Co.,* 969 F.2d 178 (6th Cir. 1992) (sole proprietor could not qualify as "participant" and his child did not qualify as a "beneficiary," and, therefore, they could sue under state law); *Sexton v. John Alden Life Insurance Co.,* 1994 WL 913331, * 5 (M.D.Ala.) ("Put another way, in order for plaintiff's state law claims to be completely preempted ... he must be entitled to bring an ERISA claim; that is he must have been a 'participant' or 'beneficiary.'" (Citing *Dodd v. John Hancock* Mutual Life Ins., 688 F.Supp. 564, 568 (E.D.Cal.1988))); *Madden v. Country Life Insurance Co.,* 835 F.Supp.

1081, 1087 (N.D.Ill.1993) (same quote as *Sexton;*) *Kelly v. Blue Cross & Blue Shield of Rhode Island,* 814 F.Supp. 220, 231 (D.R.I. 1993) ("This Court, agreeing with the majority of courts opining on this issue, refuses to strip persons who fail to qualify as participants or beneficiaries of the right to sue for recovery arising out of a clearly established contractual relationship.").

Defendants argue that although these cases, especially *Warner* and *Metropolitan Life,* fortuitously fell under that particular provision, which is the most commonly litigated because it involves the recovery of benefits by a participant or beneficiary, removal is available for cases falling under any of the civil enforcement provisions listed in 1132(a). Defendants further argue that Plaintiff's claims are removable because they fall under subsections (2), (3), (4), (5), and (8) of § 1132(a), and under federal common law.

## A. Removability Under § 1132(a)

■ The express language of ERISA confirms Defendants' contention that removal is allowed for all actions falling under 1132(a). Section 1132(f), the section which defines the scope of federal court jurisdiction, provides:

> The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant relief provided for in subsection (a) of this section in any action.

This section clearly confers jurisdiction on federal courts to grant relief provided for claims under in subsection (a), not just subsection (a)(1)(B). The first recourse of statutory interpretation is the language of the statute itself, and if that language is clear and unequivocal, as it is here, no further inquiry is necessary. While the drafters of subsection (f) could have specified that jurisdiction was limited to cases arising under (a)(1)(B), they did not. Thus, the Court interprets the statute as written: to confer federal jurisdiction over cases arising under (a) generally.

The tendency of many courts to use language restricting ERISA enforcement actions to claims arising under § 1132(a)(1)(B), and to use language restricting the proper class of plaintiffs to participants and beneficiaries, is no doubt attributable to the fact that most cases arise under that section. The plaintiffs in these cases typically seek to recover benefits, enforce their rights under a plan, or clarify their future rights under a plan. In fact, nearly all of the cases cited above, including *Warner* and *Metropolitan Life,* assert claims which either fall under 1132(a)(1)(B), or resemble claims under that section. This coincidence has, understandably, caused some confusion over whether ERISA removal is allowed for claims under (a)(1)(B) or (a) generally.

However, a careful analysis of *Metropolitan Life* shows that the Supreme Court often referred to § 1132(a) generally when dealing with ERISA removal. While analogizing 1132(f) to § 301 of the Labor Management and Relations Act (the only other statute with complete preemption), the Court stated:

> The Conference Report on ERISA describing the civil enforcement provisions of § 502(a) says:
>
> [W]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. *All such actions* in Federal or State courts *are to be* regarded as *arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947.*

*Metropolitan Life,* 481 U.S. at 65–66 (emphasis added). The Court went on to conclude by stating:

> *Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court.* Since we have found Taylor's cause of action to be within the scope of § 502(a), we must honor the intent [of Congress] whether preemption was obvious or not at the time this suit was filed.

*Metropolitan Life,* 481 U.S. at 66. As the underlined portions of these statements indicates, the Court considered the removability of ERISA actions in the context of 1132(a) generally, without limiting removability to claims brought only under (a)(1)(B).

Finally, a careful analysis of *Warner* reveals that the broad language in that case is limited to (a)(1)(B) because the facts dictated as such. Mr. Warner claimed that he was wrongfully terminated because of his age, and Ford Motor Company responded that he had settled his claim as part of an agreement governing retirement benefits. Because the suit involved retirement benefits, the only part of § 1132(a) which was implicated was the section regarding claims for benefits under a plan, i.e., 1132(a)(1)(B). The same is true for *Metropolitan Life*, in which the only claim at issue arose under § 1132(a)(1)(B). Therefore, federal courts possess jurisdiction over all claims originating under 1132(a), and not just 1132(a)(1)(B).

### B. Plaintiff's Claims are not Removable

■ Having ruled that all claims under the civil enforcement provisions of § 1132(a) are removable, the Court now turns to the crux of the issue presented in this case: whether Plaintiff's claims fall under any of the provisions of § 1132(a). Defendants argue that because Plaintiff's claims stem from communications between the Fund and its participants, it is within the domain of ERISA. Defendants' arguments fail to recognize, however, that the issue of removal in this case revolves not around the relationship between Defendants and their plan participants, but rather the relationship between Plaintiff and Defendants.

Specifically, Defendants argue Plaintiff's claims fall under §§ (2), (3), (4), (5), (8), and under federal common law. The relevant portions of 1132(a) state:

A civil action may be brought—

(1) *by a participant or beneficiary —*

    (A) for the relief provided for in subsection (c) of this section, or

    (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) *by the Secretary, or by a participant, beneficiary or fiduciary* for appropriate relief under section 1109 of this title;

(3) *by a participant, beneficiary, or fiduciary* (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

(4) *by the Secretary, or by a participant, or beneficiary* for appropriate relief in the case of a violation of 1025(c) of this title;

(5) except as otherwise provided in subsection (b) of this section, *by the Secretary* (A) to enjoin any act or practice which violates any provision of this subchapter or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter;

\*\*\*

(8) *by the Secretary, or by an employer or other person referred to in section 1021(f)(1) of this title,* (A) to enjoin any act or practice which violates subsection (f) of section 1021 of this title, or (B) to obtain appropriate equitable relief (i) to redress such violation or (ii) to enforce such subsection; . . . .

(Emphasis added). Taken collectively, the only persons empowered to bring civil enforcement actions under the first five subsections of 1132 are the Secretary, participants, beneficiaries, and fiduciaries.[5] Section 1002 of the Act defines these parties as follows:

(7) The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or who beneficiaries may be eligible to receive any such benefit.

(8) The term "beneficiary" means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

\*\*\*

---

**5.** The reference to 1021(f)(1) is not relevant, as that section regards information necessary to comply with Medicare and Medicaid coverage data bank requirements and includes references to employers, plan administrators, insurers, third party administrators, and the like.

(13) The term "Secretary" means the Secretary of Labor.

\*\*\*

(21)(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such terms includes any person designated under section 1105(c)(1)(B) of this title.

■ Plaintiff C.C. Mid West plainly does not fit within any of these categories. C.C. Mid West is not eligible to receive any benefits ("participant"), or designated by a participant to become entitled to benefits ("beneficiary"). Plaintiff is certainly not the Secretary of Labor, nor is Plaintiff someone who has discretionary authority over the plan ("fiduciary"). In fact, Plaintiff's only link to the Fund is that its new independent contractors participate in the Fund, or were promised they could participate in the Fund. Therefore, a fair reading of the plain language of the statute indicates Plaintiff's claims do not arise under section 1132 because Plaintiff is not a party authorized to file a civil enforcement action.[6]

This interpretation of which parties are empowered to bring civil suits under 1132(a) is reinforced by the Supreme Court's decision in *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). In that case, the California Franchise Tax Board levied against money held in trust for three union members by a welfare benefit trust seeking to collect unpaid personal income tax. The Board brought a state court action for declaratory relief and the defendant removed the case to federal court. The district court denied the plaintiff's motion to remand and ruled on the merits of the case.

In reversing the district court and remanding the case, the Supreme Court stated:

> Under 502(a)(3)(B) of ERISA, a participant, beneficiary, or fiduciary of a plan covered by ERISA may bring a declaratory judgment action in federal court to determine whether the plan's trustees comply with a state levy on funds held in trust. Nevertheless, CLVT's argument that appellant's second cause of action arises under ERISA fails for the second reason given above. ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment on issues in this case. A suit for similar relief by some other party does not "arise under" that provision.

*Franchise Tax Board*, 463 U.S. at 26–27. Therefore, "although a suit *by* the Trustees would 'arise under' federal law, [a] suit against them did not." Schwarzer, Tashima, & Wagstaffe, *Federal Civil Procedure Before Trial*, § 2:96.2 (1997). In the instant case, obviously analogous to *Franchise Tax Board*, the same is true—while a suit by the Trust would most likely fall within one of the provisions in 1132(a), a suit against the Trust by a party not mentioned in 1132(a) should not invoke federal jurisdiction.

Consequently, both common sense and case law indicates that if Plaintiff is not a party authorized to file a civil enforcement action, its claim does not "arise under" § 1132. In *Madden v. Country Life Ins. Co.*, 835 F.Supp. 1081 (N.D.Ill.1993), the plaintiff, a law partner, claimed that the defendant insurance company wrongfully rescinded coverage under a group health insurance policy.

---

**6.** Furthermore, Defendants arguments based on federal common law are without merit. Defendants cite *Armistead v. Vernitron*, 944 F.2d 1287 (6th Cir.1991), which "created federal common law remedies where fiduciaries fail to communicate sufficiently or accurately to participants about eligibility requirements likely to be material to their individual circumstances." (Defendants Brief, p. 14). However, the instant case does not involve a suit between participants and fiduciaries, but rather involves a suit between a non-participating employer and the trustees of a Fund, with which Plaintiff has no affiliation.

The court stated that "if the court could ignore the identity of the party seeking to avail himself of the remedies sought, the remedies themselves would appear to come within the type for which Congress expressed the intent to provide the exclusive remedy under ERISA and thus to preempt." *Madden,* 835 F.Supp. at 1084. However, the court continued:

> The identity of the party seeking to avail himself of the remedies cannot, however, be ignored. Only if a party fits within the definitions of the parties enumerated for particular remedies under ERISA is the party entitled to invoke these remedies. *Giardono v. Jones,* 867 F.2d 409, 411–14 (7th Cir.1989). "ERISA carefully enumerates the parties entitled to relief under § 502 [29 U.S.C. § 1132]." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27, 103 S.Ct. 2841, 2855, 77 L.Ed.2d 420 (1983). "The phrasing of § 502 is instructive. Section 502(a) specifies which persons—participants, beneficiaries, fiduciaries, or the Secretary of Labor—may bring actions for particular kinds of relief." *Id.* at 25, 103 S.Ct. at 2854.

*Id.* at 1085. Ultimately, the court concluded that because the law partner was not a participant or beneficiary under § 1132(a)(1)(B), the section under which such a claim would fall, his state law claims were not preempted. "To hold otherwise would be 'to strip persons who fail to qualify as participants or beneficiaries of the right to sue for recovery arising out of a clearly established contractual relationship.' *Kelly,* 814 F.Supp. at 230–31 (listing supporting cases)." *See also, Rozman v. Prudential Ins.,* 1994 WL 514030, \* 2 (N.D.Cal.) (in order for plaintiff's state law claims to be completely preempted, he must be entitled to bring an ERISA claim)(citing *Hospice of Metro Denver v. Group Health Ins.,* 944 F.2d 752, 755 (10th Cir.1991)).

Defendant never deals directly with this shortcoming, but makes an array of arguments supporting removal based on cases which are distinguishable from the instant case. First, Defendant cites *Martin v. General Motors Corporation,* 753 F.Supp. 1347 (E.D.Mich.1991), in which this Court found that removal was proper despite the fact that the plaintiff was not a participant and then dismissed the case for lack of standing to bring an action under ERISA. Defendant fails to mention, however, that the plaintiff in *Martin* claimed to be a "participant." The Court denied his claim, concluding that "ERISA preempts state law causes of actions alike with respect to both persons who are actually 'participants' or 'beneficiaries' of employee benefit plans and persons who claim to be 'participants' or 'beneficiaries' of employee benefit plans." *Martin,* 753 F.Supp. at 1358. The instant case is distinguishable from *Martin* because Plaintiff C.C. Mid West does not claim to be a participant, or any other party entitled to bring suit.

Next, Defendant cites *Harper v. TRW,* 881 F.Supp. 294 (E.D.Mich.1995), for the proposition that the proper focus is whether the plaintiff's claims fall within an area of law where Congress has indicated an intent to completely preempt state court adjudication. (*Id.* at 296 ("If Congress intends that a federal statute 'completely preempt' an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law.")). Defendant claims *Harper* is in accord with *Romney v. Lin,* 105 F.3d 806, 812 (2nd Cir. 1997), *cert. denied,* — U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 189 (holding that a plan trustee's suit against people that ERISA's civil enforcement provisions did not identify as proper defendants was properly removed), in which the court stated:

> The "scope" question was an easy one in *Metropolitan Life* since the suit "by a beneficiary to recover benefits from a covered plan … f[ell] directly under § 502(a)(1)(B) of ERISA." Id. at 62–63, 107 S.Ct. at 1546. *Metropolitan Life* thus shed little light on how far this Court might go in deeming a suit to be "within the scope" of § 502(a). That decision makes clear, however, that even though a suit is preempted by ERISA, it is not necessarily within federal court jurisdiction. There are thus some cases in which a state law cause of action is preempted, but only a state court has jurisdiction to so rule.
> \* \* \*
> Plainly, this Court cannot have meant that the only suits "within the scope" are those

so completely within the four corners of ERISA as to be winning ERISA claims, since the "scope" inquiry arises only as to claims that are defeated by ERISA's preemption provision.

*Romney,* 105 F.3d at 813.

While Defendants argue that *Romney* court's focus was on whether the issue is of central concern to ERISA, they offer only part of the picture. The court further stated:

> We think a suit that alleges an ERISA violation can be within the scope of ERISA, even though it is directed against a defendant not liable under ERISA, and that Romney's suit is within the scope of § 502. Unlike the claim in Franchise Tax Board, where "the State's right to enforce its tax levies is not of central concern to the federal statute," 463 U.S. at 25–26, 103 S.Ct. at 2855, Romney's suit to collect ERISA contributions is very much of central concern to the federal statute. Moreover, whereas the Supreme Court noted that "ERISA does not provide an alternative cause of action in favor of the State to enforce its [tax] rights," id. at 26, 103 S.Ct. at 2855, ERISA explicitly provides such a cause of action for Romney, at least vis a vis the employer.

*Romney,* 105 F.3d at 813. The court's explanation reveals two important distinguishing factors. First, the issue in *Romney* was whether a suit was within the scope of ERISA despite the fact that the defendant was not liable under the statute, not whether complete preemption applied to a plaintiff not entitled to bring suit under the civil enforcement provisions of ERISA. Second, in *Romney,* ERISA explicitly provided the plaintiff with a cause of action, unlike the instant cause in which the statute does not even authorize C.C. Mid West to be a plaintiff for ERISA civil enforcement actions.

Defendants next rely upon *General American v. Castonguay,* 984 F.2d 1518 (9th Cir. 1993). In *Castonguay,* an ERISA trust that provided health benefits to particular car dealers and their employees bought an insurance policy from the plaintiff, under which the plaintiff was to pay a portion of the claims made by the trust members, and any residual amount the trust could not pay. The insurance company covered the trust's

deficiency, and sought to hold the trustees personally liable for the money. However, the court ruled that the state law claims were preempted by ERISA because ERISA already regulated the trust-trustee relationship by imposing a fiduciary duty to the plan's beneficiaries, demanding they avoid certain conflicts of interest, and making them personally liable for a breach of fiduciary duty.

This case, although relied upon by Defendants, in reality better illustrates why the instant case should be remanded to state court. The court emphasized the importance of the relationships regulated by ERISA:

> The key to distinguishing between what ERISA preempts and what it does not lies, we believe, in recognizing that the statute comprehensively regulates certain relationships: for instance, the relationship between plan and plan member, between plan and employer, and between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee.
>
> \*\*\*
>
> To determine whether a state law is preempted we must look at whether it encroaches on the relationships regulated by ERISA.

*Castonguay,* 984 F.2d at 1521–1522.

Here, the relationship between Plaintiff C.C. Mid West and the Fund is not one that is regulated by ERISA. Plaintiff is a nonparticipating employer, who does not have any relationship whatsoever with the Fund, let alone one that is governed by the terms of ERISA. As such, the relationship implicated in the instant case—between two competitors—does not fall within the purview of 1132(a).

Finally, Defendants cite *Tolton v. American Biodyne,* 48 F.3d 937 (6th Cir.1995), in which the plaintiffs sued under state law for wrongful death, medical malpractice, and other such claims, regarding the suicide of their family member. Plaintiffs later specifically amended their complaint to include a claim under ERISA. The court ruled that ERISA preempted the plaintiffs' claims, despite not providing an adequate remedy for the wrongs they alleged. *Tolton* is easily

distinguishable from the instant case, however, because in *Tolton* the plaintiff alleged ERISA claims on the face of the amended complaint, whereas Plaintiff C.C. Mid West alleged solely state claims in its complaint.

■ In addition to these cases, at the hearing on this matter defense counsel urged the Court to examine *Feldman v. Green*, 138 Mich.App. 360, 360 N.W.2d 881 (1984). In *Feldman*, the Michigan Court of Appeals set out the elements for a claim of tortious interference with a contractual or business relationship:

> We hold, consistently with prior rulings by the Supreme Court of this state, that one who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship.

*Feldman*, 138 Mich.App. at 369, 360 N.W.2d 881. Defendant claims that because the communication to its participants was "justified," and in fact necessary, that Plaintiff's claim requires an interpretation of federal law because the employer-participant relationship is governed by ERISA. In short, Defendants argue the case should be removable to federal court because an analysis of the sufficiency of the complaint would require a court to determine whether Defendants communications were required by or consistent with ERISA and thus "justified."

■ However, this argument is insufficient to invoke federal jurisdiction because it is a defense, and as a defense it does not appear on the face of the well-pleaded complaint, and thus does not authorize removal to federal court. *Metropolitan Life*, 481 U.S. at 63–64 (citing *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). Federal question jurisdiction does not exist where the complaint is based entirely on state law, even if issues of federal law will undoubtedly be raised in the defendant's answer. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 128, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974). Defendants' argument is no more than an attempt to inject their defense into Plaintiff's complaint. Accordingly, Defendants' justification argument, while perhaps a valid defense, does not ap-pear on the face of the well-pleaded complaint and, therefore, does not provide a basis for removal jurisdiction.

## IV. CONCLUSION

In the final analysis, Plaintiff's claims are not removable under ERISA. The complaint asserts solely state law claims, and Plaintiff would be unable to bring a civil enforcement action under § 1132(a) because Plaintiff is not a party authorized to do so under that section. ERISA simply does not regulate the relationship between C.C. Mid West and the Fund, if a relationship even exists. The Court cannot allow Defendant to inject a federal question into Plaintiff's case to transform the action into one arising under federal law. To allow Defendant to do so would make Plaintiff "master of nothing." *Warner*, 46 F.3d at 534.